UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JEFFREY GIBSON,

                                 Plaintiff,

                         against

K R J S CORPORATION d/b/a
KAVI GUPTA GALLERY,

                                Defendant.
-----------------------------------------------------------------X

Index No. **1:23-cv-0557** **(LEK/CFH)**

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff Jeffrey Gibson ("Gibson"), by his undersigned attorney, hereby submits this Verified Complaint against defendant K R J S Corporation d/b/a Kavi Gupta Gallery ("Defendant" or "Gallery").

## NATURE OF THE ACTION

1. This action arises out of Defendant's violation of the New York Arts and Cultural Affairs Law ("NYACAL") and other misconduct related to Defendant's unlawful retention of $638,919.31 in funds belonging to Gibson from sales of works of art created by Gibson and consigned to Defendant.

2. Gibson is entitled to his portion of the unpaid proceeds from the sold artwork, as well as compensatory damages, disgorgement of Defendant's commissions, punitive damages, and attorneys' fees and costs as a consequence of Defendant's violation of NYACAL and breach of its fiduciary and contractual duties to Gibson.

## PARTIES

3. Plaintiff Gibson is a visual artist residing and maintaining an art studio in Columbia County.

4. Upon information and belief, Defendant is a corporation organized under the laws of the State of Illinois that operates a fine art gallery with various locations including a main gallery located at 835 W. Washington Blvd. Chicago, Illinois 60607. Upon information and belief, Defendant's principal place of business is located at the W. Washington Blvd. address set forth above.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the action is between citizens of different States, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. This Court has personal jurisdiction over Defendant pursuant to CPLR 302(a)(1) because Defendant transacts business within the State and/or contracts anywhere to supply goods or services in the State; and/or pursuant to CPLR 302(a)(2) and (3) due to Defendant's tortious acts.

## FACTUAL ALLEGATIONS

Gibson

8. Gibson is an interdisciplinary artist based in Hudson, New York. His practice combines the cultural and artistic traditions of his Cherokee and Choctaw heritage with the visual languages of Modernism and themes from contemporary popular and queer culture. His work is

included in the permanent collections of the Whitney Museum of American Art, the Denver Art Museum, the Museum of Fine Arts, Boston, Smithsonian Institution's National Museum of the American Indian, the National Gallery of Canada, among many others.

9. His work has been exhibited extensively throughout the country. He is a recipient of numerous awards, notably a MacArthur Foundation Fellowship (2019) and a Joan Mitchell Foundation Painters and Sculptors Award. He also serves as a member of the Board of Directors of the Andy Warhol Foundation for the Visual Arts, a non-profit dedicated to the advancement of the visual arts.

The Gallery

10. Defendant is a gallery operated by art dealer Kavi Gupta, and does business as the "Kavi Gupta Gallery."

11. According to Defendant's website located at www.kavigupta.com, Defendant "operates[s] multiple museum-quality exhibition spaces," "host[s] more than a dozen major exhibitions each year" and "participat[es] in vital international art fairs."

12. According to its website, the Gallery "amplifies voices of diverse and underrepresented artists to expand the canon of art history." "Our vision is to seek out and offer a platform to artists whose vitality expands and deepens the cultural conversation, especially if theirs is a voice that has been marginalized due to their identity, their social or political perspective, or their aesthetic position."

Gibson's Consignment of Artworks to the Gallery

13. In or around late 2017, the Gallery contacted Gibson to express general interest in his work and specific interest in displaying one of his works in an upcoming curated booth at an upcoming art fair in Miami Beach, Florida. The Gallery also expressed an interest in coming to

visit Gibson at his Columbia County studio to become better acquainted and to potentially establish a working relationship.

14. After the Miami Beach exhibition, Gallery representatives met with Gibson at his Claverack studio in January 2018 to discuss how the parties might work together.

15. From time to time thereafter, Gibson consigned artworks to the Gallery for exhibition and sale.

16. Under the parties' agreement (as is common between artists and art galleries), the Gallery was authorized to retain as its sales commission fifty percent (50%) of the proceeds from the sale of each artwork on consignment, and the Gallery had the corresponding obligation to promptly remit to Gibson his portion of the sales proceeds.

17. In addition to confirming an agreement for the allocation of sales proceeds, the Gallery offered to pay the framing cost for certain unframed consigned works. The arrangement proposed by the Gallery was that any sold work for which the framing cost was paid by the Gallery would entitle the Gallery to deduct that cost "off the top" of the purchase price before equally allocating the balance of sales proceeds between the parties. Any other costs incurred by the Gallery in the course of exhibiting and/or selling Gibson's artworks would be strictly a Gallery expense. At no time did the Gallery ever propose and at no time did Gibson agree to any reimbursement of any cost other than certain framing costs (in the manner described).

18. Beginning in December 2017 (the Miami Art Fair) and continuing thereafter, the Gallery received numerous artworks created and consigned by Gibson.

19. At no time did the Gallery ever prepare or propose a written contract setting forth any of the terms that would govern the consignment of artworks from Gibson.

20. Nevertheless, beginning in or around September 2018 (through another art fair)

and continuing thereafter, the Gallery sold numerous artworks created and consigned by Gibson.

21. While initially the Gallery did properly remit Gibson's share of sales proceeds, at some point the Gallery fell behind and failed to timely remit Gibson's full share of sales proceeds.

Efforts to Receive Sales Proceeds

22. In or about early April 2022, Gibson became concerned that sales proceeds were not being timely or fully remitted. Beginning then and thereafter, several requests were made for clear and complete statements and for full payments.

23. In or around December 2022, Gibson retained counsel to assist in the effort to confirm the outstanding amount owed along with an expressed willingness to accept a payment plan.

24. Gibson's counsel contacted the Gallery numerous times to obtain the necessary information about amounts owed, and to confer with the Gallery on a timeframe for payout.

25. Despite Gibson's repeated attempts to obtain this information directly from the Gallery and through counsel, the Gallery failed to supply clear information confirming the balance of sales proceeds unremitted to Gibson.

26. Gibson's calculation of the withheld sales proceeds based upon available information (including credit for all known framing costs paid by the Gallery) is $638,919.31.

27. The Gallery has not supplied any records indicating that a lesser amount is owed.

28. Because the Gallery has stalled and failed to even negotiate in earnest a mutually acceptable payment plan, Gibson is now forced to commence this action to seek the full amount of sales proceeds which belong to him (together with additional compensation permitted by law).

## FIRST CAUSE OF ACTION

### (Breach of Duty Owed Under NYACAL)

29.     Gibson repeats and realleges all of the foregoing allegations as if fully set forth herein.

30.     Over the course of the parties' working relationship, artworks created and owned by Gibson were delivered to Defendant on consignment for exhibition and sale on Gibson's behalf as Gibson's agent.

31.     Defendant is an art merchant as that term is defined under NYACAL § 11.01 because it is "in the business of dealing, exclusively or non-exclusively in works of fine art" as contemplated by NYACAL § 12.01.

32.     Gibson was the sole creator and owner of all of the artworks he consigned to Defendant.

33.     By delivering artworks for exhibition and sale, a consignment and trust relationship was created under NYACAL § 12.01, thereby obligating Defendant to hold all sales proceeds as trust property for the benefit of Gibson and to promptly distribute those proceeds which would belong to Gibson.

34.     While the Gallery did pay some sales proceeds to Gibson, it has failed to do so fully, and has thus improperly withheld sales proceeds from Gibson, in an amount to be determined at the trial of this action, but calculated to be not less than $638,919.31, plus attorneys' fees, costs, and interest.

35.     Despite Gibson's repeated demands for his share of sales proceeds, Defendant has failed to remit the amount calculated to belong to Gibson.

36. Defendant's failure and refusal to remit sales proceeds constitutes a clear and material breach of Defendant's statutory duties.

37. By reason of the foregoing, Gibson is entitled to (1) his share of withheld sales proceeds from sales of his artworks, which is calculated to be not less than $638,919.31; (2) a full and legally sufficient accounting; and (3) additional compensatory damages in an amount to be determined at trial.

38. Pursuant to NYACAL § 12.01(3), this Court should also award reasonable attorneys' fees, costs, and expenses to Gibson, plus pre-judgment interest.[1]

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

39. Gibson repeats and realleges all of the foregoing allegations as if fully set forth herein.

40. As a fiduciary agent of Gibson, Defendant owes Gibson the fiduciary duties of honesty, loyalty, disclosure, and fair dealing.

41. Pursuant to these fiduciary duties, Defendant had the legal obligation to act only in Gibson's interest and forgo all personal advantage aside from the agreed 50% sales commission for Defendant's services.

42. Defendant has breached its fiduciary duties to Gibson by failing to pay Gibson his share of the proceeds of the sale of his artworks.

43. Defendant's conduct has caused Gibson substantial damage by depriving Gibson of the proceeds from the sale of the artworks.

---

[1] To the extent that Defendant may argue that the Illinois consignment statute applies, rather than the New York consignment statute, Gibson pleads in the alternative breach of the applicable Illinois consignment statute, 815 ILCs 320.

44. By reason of the foregoing, Gibson is entitled to the payment of the outstanding proceeds from the sale of the artworks in an amount to be determined at trial, but believed to be not less than $638,919.31, plus pre-judgment interest.

45. By reason of the Gallery's faithlessness as Gibson's agent, Gibson is also entitled to equitable forfeiture of commissions paid to the Gallery since its first faithless act.

46. The Gallery's failure to pay Gibson the full sale proceeds from the sale of each of his artworks promptly upon payment constitutes faithless acts, as well as its refusal to pay the sales proceeds upon demand.

47. As such, Gibson is also entitled to disgorgement of commissions the Gallery took from Gibson from the time of its first faithless act in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

48. Gibson repeats and realleges all of the foregoing allegations as if fully set forth herein.

49. The parties agreed that the Gallery could sell the artworks consigned to the Gallery provided that the Gallery remit to Gibson fifty percent (50%) of the sales proceeds for unframed works, and fifty percent (50%) of the sales proceeds after deducting any framing costs paid by the Gallery for any such framed work.

50. The Gallery has breached this agreement by refusing to remit to Gibson the amounts owed for the sale of consigned works.

51. Gibson has performed all his obligations under the parties' agreement.

52. As a result of the foregoing, Gibson is entitled to recover his compensatory damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Conversion)

53. Gibson repeats and realleges all of the foregoing allegations as if fully set forth herein.

54. Gibson has demanded that the Gallery remit these sales proceeds which belong to him, and the Gallery has refused the demand by failing to pay. Accordingly the Gallery has converted the funds belonging to Gibson for the Gallery's own use.

55. By reason of the foregoing, Gibson is entitled to the immediate receipt of his sales proceeds, which should have been held in trust for his benefit and promptly paid over to him, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Accounting)

56. Gibson repeats and realleges all of the foregoing allegations as if fully set forth herein.

57. Pursuant to applicable law, the Gallery was Gibson's fiduciary agent.

58. The Gallery has breached its fiduciary duties including by failing to provide a full and legally-sufficient accounting of sales proceeds and any applicable expenses.

59. By reason of the foregoing, Gibson is entitled to an equitable accounting.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Gibson demands a trial by jury for all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Gibson seeks entry of an order and judgment in his favor and against the Gallery on each and every cause of action, and:

(a) Directing the Gallery to pay to Gibson damages in an amount to be determined at trial, but believed to be not less than $638,919.31;

(b) Directing the Gallery to make equitable forfeiture of commissions paid to the Gallery since its first faithless act in an amount to be determined at trial;

(c) Directing the Gallery to pay to Gibson such exemplary or punitive damages against the Gallery as the Court may deem just and proper;

(d) Directing the Gallery to immediately prepare and deliver to Gibson an accounting as detailed herein;

(e) Awarding to Gibson statutory interest at the maximum rate allowable by law;

(f) Awarding Gibson his costs, expenses, and reasonable attorneys' fees in pursuing this action pursuant to applicable law, including without limitation NYACAL § 12.01; and

(g) Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 8, 2023

BRANKOV PLLC

By: ___/s/ Amelia K. Brankov___
      Amelia K. Brankov
1185 Avenue of the Americas, 3rd Fl.
New York, New York 10036
Tel.: (212) 404-1210
abrankov@brankovlaw.com

*Attorney for Plaintiff Jeffrey Gibson*