UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEFFREY GIBSON,

                         Plaintiff,

        -against-                                    1:23-CV-557 (LEK/CFH)

K R J S CORPORATION,

                         Defendant.

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff Jeffrey Gibson brought this action against Defendant K J R S Corporation d/b/a
Kavi Gupta Gallery on May 8, 2023. Dkt. No. 1 ("Complaint"). On June 21, 2023, Plaintiff
sought entry of default, Dkt. No. 5, which the Clerk granted, Dkt. No. 6 ("Entry of Default"). On
July 14, 2023, Plaintiff filed a motion for default judgment, which is now before the Court. Dkt.
No. 9-11 ("Motion for Default Judgment" or "Motion"). On August 21, 2023, and with leave of
the Court, see Dkt. No. 19, Defendant filed a combined motion responding to Plaintiff's Motion
for Default Judgment and cross-moving to set aside the Entry of Default. Dkt. No. 20-5
("Response and Cross-Motion" or "Cross-Motion"). On August 28, 2023, Plaintiff filed a reply
to Defendant's Response and Cross-Motion. Dkt. No. 21 ("Reply").

For the reasons that follow, the Court holds that Defendant's Cross-Motion is granted, the
Entry of Default is vacated, and Plaintiff's Motion for Default Judgment is denied.

## II.     BACKGROUND

The following facts are set forth as alleged in Plaintiff's Complaint.

Plaintiff is an interdisciplinary visual artist based in Hudson, New York. See Compl. ¶¶
3, 8. His practice "combines the cultural and artistic traditions of his Cherokee and Choctaw

heritage with the visual languages of Modernism and themes from contemporary popular and queer culture." Id. ¶ 8. Plaintiff's work has been featured "in the permanent collections of the Whitney Museum of American Art, the Denver Art Museum, the Museum of Fine Arts, Boston, Smithsonian Institution's National Museum of the American Indian, the National Gallery of Canada, among many others." Id.

Defendant is an art gallery incorporated under the laws of Illinois, see id. ¶ 4, and operated by the art dealer Kavi Gupta, see id. ¶ 10. "In or around late 2017," Defendant contacted Plaintiff to express interest in displaying Plaintiff's work at an art fair in Miami Beach, Florida. Id. ¶ 13. From that point forward, Defendant and Plaintiff remained in contact and, "[f]rom time to time thereafter," Plaintiff "consigned artworks to the Gallery for exhibition and sale." Id. ¶¶ 14–15.

According to Plaintiff, the parties had an agreement under which Defendant was authorized to retain fifty percent of the proceeds of each sale as a sales commission. See id. ¶ 16. Plaintiff alleges that their agreement required Defendant to "promptly remit" the remaining proceeds to Plaintiff. Id.

Plaintiff also alleges that, in conjunction with their sales agreement, Defendant "offered to pay the framing cost for certain unframed consigned works." Id. ¶ 17. Defendant proposed to deduct any framing expenses from the sale price of the art being framed, after which Defendant would take fifty percent commission of the remaining proceeds as its commission. See id. Plaintiff alleges that Defendant was otherwise obligated to bear any "costs incurred . . . in the course of exhibiting and/or selling [Plaintiff's] artworks." Id.

2

Plaintiff states that the parties never formalized these agreements in a written contract. See id. ¶ 19. Despite this, Defendant apparently sold "numerous artworks created and consigned by" Plaintiff, starting "in or around September 2018". Id. ¶ 20.

Plaintiff asserts that, at first, Defendant properly remitted sales proceeds to Plaintiff. See id. ¶ 21. However, "at some point," Defendant "fell behind and failed to timely" pay Plaintiff his share of each sale. Id. As a result, Plaintiff made "several requests" for "clear and complete statements and for full payments" starting "[i]n or about early April 2022." Id. ¶ 22.

In December 2022, Plaintiff "retained counsel to assist in the effort to confirm the outstanding amount owed along with an expressed willingness to accept a payment plan." Id. ¶ 23. Plaintiff's counsel apparently contacted Defendant "numerous times," id. ¶ 24, but Defendant repeatedly "failed to supply clear information confirming the balance of sales proceeds unremitted to" Plaintiff, id. ¶ 25.

Plaintiff estimates that he is owed $638,919.31 by Defendant. See id. ¶ 26. To this end, he has asserted the following five causes of action against Defendant: (1) breach of duty owed under the New York Arts and Cultural Affairs Law ("NYACAL"), see id. ¶¶ 29–38; (2) breach of fiduciary duty, see id. ¶¶ 39–47; (3) breach of contract, see id. ¶¶ 48–52; (4) conversion, see id. ¶¶ 53–55; and (5) failure to provide an equitable accounting, see id. ¶¶ 56–59.

## III. LEGAL STANDARD

After the clerk has filed an entry of default against a party that has failed to plead or otherwise defend, a court may enter default judgment upon application of the opposing party. See Fed. R. Civ. P. 55(b). Default judgment is an extreme sanction, and decisions on the merits are favored. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). District courts may vacate an entry of default for "good cause." Fed. R. Civ. P. 55(c). "The dispositions of motions for

entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).

## IV.   DISCUSSION

Because Plaintiff's Motion for Default Judgment is predicated upon the Entry of Default, Defendant's Cross-Motion to vacate Plaintiff's Entry of Default is potentially dispositive of Plaintiff's Motion, and so the Court will address Defendant's Cross-Motion first. If the Entry of Default is vacated, then Plaintiff's Motion for Default Judgment must be denied. <u>See</u> L.R. 55.1(b).

### A.  Cross-Motion to Vacate Entry of Default

District courts may vacate an entry of default for "good cause." Fed. R. Civ. P. 55(c). In evaluating whether good cause exists, "the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." <u>S.E.C. v. McNulty</u>, 137 F.3d 732, 738 (2d Cir. 1998).

Defendant argues that Plaintiff's Entry of Default should be vacated on all three bases. That is, Defendant argues (1) that its default was not willful; (2) that it possesses a meritorious defense to Plaintiff's allegations; and (3) Plaintiff will not be unduly prejudiced by denial of his Motion for Default Judgment. <u>See</u> Resp. and Cross-Mot. at 2–9; <u>see also</u> <u>id.</u> at 10–11.  The Court will address each argument in turn.

    *1.   Willfulness*

    Defendant argues that its failure to appear was not willful because, "upon receipt of the Summons and Complaint, [Defendant] involved its Illinois-based counsel and counsel promptly engaged in discussions with Plaintiff's counsel in an effort to resolve the dispute." Id. at 3. In the meantime, Defendant asserts, "it did not appreciate that, despite ongoing settlement discussions, a New York attorney was required to appear in the action . . . ." Id. at 3–4. Furthermore, Defendant asserts that it "was not aware of the entry of default." Id. at 4. Finally, Defendant claims that, upon receiving notice of the Motion for Default Judgment, it promptly retained litigation counsel in New York. See id. Defendant's new counsel appeared in this action twelve days after Plaintiff filed his Motion for Default Judgment. See id.

    Plaintiff disputes Defendant's claims and argues that Defendant's delays were in bad faith. First, Plaintiff asserts that, at the time of Defendant's default, Plaintiff had rejected all of Defendant's recent settlement offers. See Reply at 4–6. According to Plaintiff, this undermines Defendant's claim that it defaulted because it had expected their settlement negotiations to resolve the litigation. See id. Plaintiff also points out that Defendant's Illinois-based counsel was a trial attorney, and that Defendant therefore (1) had already retained litigation counsel before this case was filed, and (2) must have known that it was required to answer Plaintiff's Complaint. See id. at 6. Finally, Plaintiff argues that Defendant has engaged in pattern of dilatory tactics, and infers from this that Defendant's default is intentional. See id. at 6–7.

    For the purposes of a motion to vacate an entry of default, "willfulness" refers to conduct that is "more than merely negligent or careless." McNulty, 137 F.3d at 738. That is, in order to be "willful," a party's default generally must be both "egregious" and "not satisfactorily explained" after the fact. Id.

Defendant admits that it received Plaintiff's summons and Complaint, but that it still failed to appear until receiving Plaintiff's Motion for Default Judgment. See Resp. and Cross-Mot. at 3–4. Failure to appear is an egregious mistake, and it is difficult to understand how Defendant (and its Illinois-based counsel) could make such a fundamental error. See McNulty, 137 F.3d at 739 ("Normally, the conduct of an attorney is imputed to his client . . . ."). However, the seriousness of Defendant's negligence does not definitively establish that Defendant acted in bad faith. While it is possible that Defendant intentionally refused to appear for tactical reasons, it seems equally plausible that Defendant's default was a product of negligence and mismanagement. See Raheim v. New York City Health and Hosps. Corp., No. 96-CV-1045, 2007 WL 2363010, at *4 (E.D.N.Y. Aug. 14, 2007) (noting that courts must "must resolve any doubt about . . . willfulness" in favor of the party opposing default). Furthermore, it is difficult to understand how Defendant stood to benefit from a delay of several months, particularly given that they risked default judgment in the process.

Each party has cited cases in which courts have either denied or granted default judgment under similar circumstances. See, e.g., Resp. and Cross-Mot. at 3–5; Reply at 4, 7. This variety is a natural product of the wide discretion afforded to district courts in matters involving the entry of default and motions for default judgment. See Enron, 10 F.3d at 95.

In this case, however, the Court finds that Defendant's conduct was not sufficiently egregious to warrant a finding of willfulness. In particular, the Court notes that many of the relevant cases involving awards of default judgment involve delays that are much longer than several months. See, e.g., Labarbera v. Interstate Payroll Co., Inc., No. 07-CV-1183, 2009 WL 1564381, at *1 (E.D.N.Y. June 2, 2009) (awarding default judgment one full year after suit was filed); E-Bus. Holdings, LLC v. Webgenius.com, Inc., No. 02-CV-10308, 2004 WL 2884311, at

*2 (S.D.N.Y. Dec. 10, 2004) (awarding default judgment where Plaintiff filed motion "well over a year" after bringing suit and noting that the defendants had yet to appear before the court). Furthermore, there are many cases in which courts have hesitated to find willfulness, despite (1) much longer delays and (2) more severe lapses in professional judgment. See, e.g., Smart Med. Sols. LLC v. MeddCare Corp., No. 22-CV-5824, 2023 WL 5979126, at *4 (E.D.N.Y. Aug. 8, 2023) (finding that "failure to promptly hire counsel and appear in the case" for five months did not demonstrate willfulness, despite the fact that Plaintiff appeared almost two months after motion for default judgment, where Plaintiff otherwise intended to respond to complaint eventually); Elohim EPF USA, Inc. v. 162 D & Y Corp., No. 19-CV-2431, 2021 WL 2292682, at *2–3 (S.D.N.Y. June 4, 2021) (declining to find willfulness, despite the fact that defendants (1) failed to appear for almost a year, (2) failed to move to vacate certificates of default until almost a year after entry of default, and (3) were aware of litigation from an early date); Am. Empire Surplus Lines Ins. Co. v. Concord Restoration Inc., No. 20-CV-2341, 2021 WL 7830142, at *6 (E.D.N.Y. July 28, 2021) (finding that "decision not to seek legal counsel for nearly three months" may have been "careless, or even negligent," but "was clearly not willful" (citation omitted)); RL 900 Park LLC v. Ender, No. 18-CV-12121, 2020 WL 70920, at *3 (S.D.N.Y. Jan. 3, 2020) (noting that Court might have "hesitate[d] to find that . . . default was willful" after fifteen-month delay in appearance, had defaulting party not continued to show "disregard for this litigation").

The Court agrees with Plaintiff that it would not be an abuse of discretion for the Court to deny Defendant's Cross-Motion "on the ground that [Defendant's] default was willful." Reply at 4 (quoting Jaramillo v. Vega, 675 Fed. App'x. 76, 77 (2d Cir. 2017)). However, the Court finds that the policies underlying Federal Rule of Civil Procedure 55 are not served by granting default

judgment here, where (1) Defendant promptly appeared after receiving Plaintiff's Motion for Default Judgment, see Dkt. No. 13; (2) Defendant's appearance was less than three months after Plaintiff filed his Complaint; and (3) Defendant alleges that it was not aware of Plaintiff's Entry of Default, see Resp. and Cross-Mot. at 3–4. Given that it is not clear whether Defendant's conduct is the product of bad faith or negligence, and given that any doubts regarding default judgment should be "resolved in favor of" addressing a case on the merits, see Meehan, 652 F.2d at 277, the Court declines to find that Defendant's default was willful.

### 2. *Meritorious Defense*

The existence of a meritorious defense is "measured not by whether there is a likelihood pthat [such a defense] will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron, 10 F.3d at 98 (citations omitted). The Court therefore does not need to assess the credibility of Defendant's assertions, nor is it required to consider Defendant's intent to raise various counterclaims against Plaintiff. See Resp. and Cross-Mot. at 7–8. Instead, Defendant will have sufficiently asserted a meritorious defense if it has alleged facts that, if proven, would defeat Plaintiff's claims.

Plaintiff has asserted five causes of action against Defendant. The first four causes of action—breach of duty owed under NYACAL, see Compl. ¶¶ 29–38; breach of fiduciary duty, see id. ¶¶ 39–47; breach of contract, see id. ¶¶ 48–52; and conversion, see id. ¶¶ 53–55—are each predicated upon allegations that Defendant has withheld funds to which Plaintiff is entitled. See id. ¶¶ 33–34, 41–42, 49–50, 54. However, Defendant denies that it has withheld any sales proceeds to which Plaintiff is entitled. See Dkt. No. 20-2 ¶ 26. This fact alone, if proven, would be fatal to each of Plaintiff's first four claims.

Similarly, Defendant alleges that it has provided Plaintiff with all requested financial information. See id. ¶ 24. This assertion, if proven, would prove fatal to Plaintiff's fifth cause of action, which is predicated on Defendant's failure "to provide a full and legally-sufficient accounting of sales proceeds and any applicable expenses." Compl. ¶ 58. Therefore, Defendant's factual assertion that it has provided all requested information constitutes a meritorious defense to Plaintiff's fifth cause of action.

The Court thus finds that Defendant has sufficiently alleged meritorious defenses to all causes of action. The Court notes, however, that it expresses no view as to Defendant's ability to withstand a properly filed dispositive motion. The Court merely finds that Defendant has alleged enough to carry its burden in showing that it would not be futile for this Court to vacate Plaintiff's Entry of Default.

3. *Prejudice*

The parties agree that Defendant's default has delayed this case. See Resp. and Cross-Mot. at 6; Reply at 12–13. The parties disagree, however, as to the prejudicial effect of this delay. Plaintiff asserts that "there is a real concern that a delay in recovery may thwart [Plaintiff's] ability to recover his funds in the future," and argues that such a delay will provide Defendant with opportunities "to improperly commingle [Plaintiff's] funds with its own . . . ." Reply at 12–13. By contrast, Defendant points out that a delay is generally only prejudicial where it (1) results in "the loss of evidence," (2) creates "increased difficulties of discovery," or (3) provides "greater opportunity for fraud and collusion." Resp. and Cross-Mot. at 5 (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)). Defendant argues that none of these risks are present, and so it would not be prejudicial to allow this case to proceed to evaluation on the merits. See Resp. and Cross-Mot. at 5–6.

"Concededly, some delay will result" if Defendant's Cross-Motion is granted. Davis, 713 F.2d at 916. But even setting aside the parties' dispute over the productiveness of their settlement discussions, the Court finds that this delay would not be unduly prejudicial to Plaintiff. Plaintiff's only argument to this affect is that Defendant will use the time provided by this delay to spend Plaintiff's funds and thus become judgment proof. See Reply at 12–13. The Court construes this as an argument that the delay will give Defendant "greater opportunity for fraud and collusion." Davis, 713 F.2d at 916.

However, Plaintiff has provided no basis for his position that Defendant is inclined to commit such fraud, aside from the fact that Defendant's "payment history" to Plaintiff suggests that it may have "cash flow issues." Reply at 12–13. "[C]ourts generally do not consider a non-defaulting party's speculation regarding the recoverability of funds to be an important factor in assessing whether a party will be prejudiced by vacatur of default." Li v. Fleet New York Metro. Regl. Ctr. LLC, No. 21-CV-5185, 2022 WL 1666963, at *9 (E.D.N.Y. May 25, 2022) (collecting cases). If Plaintiff does discover evidence suggesting that Defendant is likely to act in bad faith, then Plaintiff may seek a preliminary injunction preventing the misappropriation of funds. See id.

The Court therefore finds that vacatur of the Entry of Default will not unduly prejudice Plaintiff. And, because all three Enron factors weigh in favor of Defendant, the Court finds that vacatur of the Entry of Default is warranted.

### B.  Motion for Default Judgment

The Entry of Default served as the basis for Plaintiff's Motion for Default Judgment. See L.R. 55.1(b). Because the Entry of Default has now been vacated, the Court denies Plaintiff's Motion in its entirety.

Defendant is directed to file its answer to Plaintiff's Complaint by March 29, 2024. This matter is otherwise referred to the Honorable Christian F. Hummel, Magistrate Judge, for further proceedings.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Cross-Motion (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED**, that the Entry of Default (Dkt. No. 6) is **VACATED**; and it is further

**ORDERED**, that Plaintiff's Motion for Default Judgment (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant file its answer to Plaintiff's Complaint by March 29, 2024; and it is further

**ORDERED**, that this case be referred to Judge Hummel for further proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 15, 2023
            Albany, New York

LAWRENCE E. KAHN
United States District Judge